## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

COLUMBIA GULF TRANSMISSION, LLC

       Petitioner,

  v.

FEDERAL ENERGY REGULATORY COMMISSION,

       Respondent.

No. 22-1151

## PETITION FOR REVIEW

Columbia Gulf Transmission, LLC petitions this Court to review the Federal Energy Regulatory Commission's orders in *Range Resources-Appalachia, LLC*, 178 FERC ¶ 61,217 (Mar. 24, 2022) (order dismissing complaints) and *Range Resources-Appalachia, LLC*, 179 FERC ¶ 62,106 (May 26, 2022) (notice of denial of rehearing by operation of law).  15 U.S.C. § 717r(b); Fed. R. App. P. 15(a).  The order dismissing complaints and notice of denial of rehearing by operation of law are attached as Exhibits A and B, respectively.

The Court should grant the petition because the Commission's order and notice are arbitrary, capricious, and not in accordance with law.

Respectfully submitted,

/s/ Matthew J. Higgins
Sean Marotta
Matthew J. Higgins
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5889
matthew.higgins@hoganlovells.com

Dave Hammel
TC ENERGY CORPORATION
700 Louisiana Street, Suite 700
Houston, TX 77002
(281) 381-3925
dave_hammel@tcenergy.com

*Counsel for Columbia Gulf Transmission, LLC*

July 8, 2022

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

COLUMBIA GULF TRANSMISSION,
LLC

          Petitioner,

    v.

FEDERAL ENERGY REGULATORY
COMMISSION,

          Respondent.

No.

## CORPORATE DISCLOSURE STATEMENT

Columbia Gulf Transmission, LLC is a 3,340-mile pipeline serving Louisiana, Mississippi, Tennessee, and Kentucky.  Columbia Gulf connects to virtually every major pipeline in the U.S. Gulf Coast and to additional Midwestern lines.

Columbia Gulf Transmission, LLC is a wholly owned subsidiary of Columbia Pipeline Group, Inc., which is a wholly owned subsidiary of TransCanada PipeLine USA Ltd., which is a wholly owned subsidiary of TransCanada PipeLines Limited, which is a wholly owned subsidiary of TC Energy Corporation.

1

TC Energy Corporation is incorporated in Alberta, Canada.  It publicly trades on the New York Stock Exchange, and no person or entity has a 10% or greater ownership interest.

Respectfully submitted,

/s/ Matthew J. Higgins
Matthew J. Higgins
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5889
matthew.higgins@hoganlovells.com

*Counsel for Columbia Gulf Transmission, LLC*

July 8, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, I caused a copy of the foregoing to be

delivered by first-class mail, postage prepaid to the following:

Robert H. Solomon
Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426

Kimberly Bose
Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, DC 20426

Jennifer R. Rinker
Patti Fitzpatrick
Berk Donaldson
Texas Eastern Transmission, LP
5400 Westheimer Court
P.O. Box 1642
Houston, TX 77251

James D. Seegers
Suzanne E. Clevenger
Vinson & Elkins L.L.P.
1001 Fannin Street, Suite 2500
Houston, TX 77002

Anita R. Wilson
Andrew N. Beach
Victoria G. Godfrey
Vinson & Elkins L.L.P.
2200 Pennsylvania Avenue NW
Suite 500
Washington, DC 20037
*Counsel for Texas Eastern Transmission, LP*

John Floom
Kaci W. Poor
Floom Energy Law PLLC
3100 Clarendon Blvd., Suite 920
Arlington, VA 22201
*Counsel for Range Resources – Appalachia LLC*

Robert Tise
Robert Kelly
3501 NW 63rd Street
Oklahoma City, OK 73116
*Counsel for Intervenor Ascent Resources – Utica, LLC*

James Jeffries
McGuireWoods, LLP
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
*Counsel for Intervenors Atmos Energy Corporation,*
        *Trans Louisiana Gas Pipeline, Inc.,*
        *Piedmont Natural Gas Company, Inc.,*
        *Symmetry Energy Solutions, LLC,*
        *Duke Energy Indiana, LLC, and*
        *Duke Energy Ohio, Inc. and Duke Energy Kentucky, Inc.*

Blake Urban
4 Irving Place
New York, NY 10003
*Counsel for Intervenors Consolidated Edison Company of New York, Inc.*
        *and Orange and Rockland Utilities, Inc.*

Kristin Gibbs
Pamela Wu
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave. NW
Washington DC 20004
*Counsel for Intervenor Equinor Natural Gas LLC*

Barbara Jost
Shannon E. O'Neil
Davis Write Tremaine LLP
1301 K Street NW
Suite 500 East
Washington, DC 20005
*Counsel for Intervenor EQT Energy, LLC*

Priyanka Vashisht
John Gregg
McCarter & English, LLP
1301 K Street, NW
Suite 1000 West
Washington, DC 20005
*Counsel for Intervenor The Municipal Defense Group*

James E. Olson
Jones Day
717 Texas, Suite 3300
Houston, TX 77002
*Counsel for Intervenor TotalEnergies Gas & Power North America, Inc.*

Kenneth Maloney
Cullen and Dykman
1101 Fourteenth Street, NW
Suite 750
Washington, DC 20005
*Counsel for Intervenor National Grid Gas Delivery Companies*

William Scharfenberg
NJR Service Corporation
1415 Wyckoff Road
Wall, NJ 07719
*Counsel for Intervenors New Jersey Natural Gas Company and
        NJR Energy Services Company*

Joel Greene
Andrea Sarmentero
Jennings, Strouss & Salmon, P.L.C.
1300 I Street, NW
Suite 1120
Washington, DC 20005
*Counsel for Intervenor Philadelphia Gas Works*

Mark Haskell
Blank Rome LLP
1825 Eye Street, N.W.
Washington, DC 20006
*Counsel for Intervenors Shell Energy North America (U.S.), L.P.,*
*Direct Energy Business Marketing, LLC, and*
*Chevron U.S.A. Inc.*


/s/ Matthew J. Higgins
Matthew J. Higgins


4

# EXHIBIT A

178 FERC ¶ 61,217
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
                        James P. Danly, Allison Clements,
                        Mark C. Christie, and Willie L. Phillips.

| | |
|---|---|
| Range Resources-Appalachia, LLC and Columbia Gulf Transmission, LLC | Docket No.   RP22-433-000 |
| v. | |
| Texas Eastern Transmission, LP | |
| Range Resources-Appalachia, LLC | Docket No.   RP22-435-000 |
| v. | |
| Texas Eastern Transmission, LP | (Not Consolidated) |

ORDER DISMISSING COMPLAINTS

(March 24, 2022)

1.      On December 21, 2021, Range Resources-Appalachia, LLC (Range) filed a complaint against Texas Eastern Transmission, LP (Texas Eastern) in Docket No. RP22-435-000 (Range Complaint), as well as a joint complaint against Texas Eastern with Columbia Gulf Transmission, LLC (Columbia Gulf) (jointly, Complainants) in Docket No. RP22-433-000 (Joint Complaint) (collectively, Complaints).  Complainants assert that for certain time periods in 2019 and 2021, Texas Eastern failed to deliver gas at the Adair Interconnect at the minimum pressure necessary for delivery into the Columbia Gulf system.[1]  Complainants contend that Texas Eastern has violated its

---

[1] The Complaints refer to these incidents as the 2019 and 2021 Curtailments (collectively Curtailments or Curtailment Periods).  The 2019 Curtailment allegedly occurred November 5 through November 11, 2019.  The 2021 Curtailment allegedly occurred May 23, through July 29, 2021.  For convenience, the order will use these designations.

certificate obligations, the Natural Gas Act (NGA), Commission regulations, Texas Eastern's Tariff (Tariff), and Range's firm service agreement with Texas Eastern.

2.    As described in this order, we dismiss the Complaints, finding they have not met the burden of proving any violations of law, regulations, contracts, or Commission orders.

## I.    **Background**

3.    According to the Complaints, Range is a natural gas producer with operations focused on the development of the Marcellus shale formation in Pennsylvania. Complainants state that Range holds long-term firm transportation service contracts on Texas Eastern and Columbia Gulf for takeaway capacity of its natural gas production.

4.    Texas Eastern owns and operates an interstate natural gas pipeline system extending from Texas, Louisiana, and the offshore Gulf of Mexico area, traversing the states of Mississippi, Arkansas, Alabama, Missouri, Tennessee, Illinois, Indiana, Kentucky, Ohio, West Virginia, Pennsylvania, Maryland, and New Jersey, to its principal terminus in the New York City metropolitan area.

5.    Columbia Gulf owns and operates an approximately 3,300-mile natural gas transmission system extending from Louisiana through the states of Mississippi and Tennessee to northeast Kentucky.

6.    According to the Complaints, the Adair Interconnect is the delivery point for natural gas flowing from Texas Eastern's 30-inch system into Columbia Gulf's system in Adair County, Kentucky.  The capacity at issue in the Complaints was part of the Adair Southwest Expansion Project that provides up to 200,000 dekatherms (Dth)/day of capacity to transport supply from a receipt point in Uniontown, Pennsylvania to the Adair Interconnect delivery point with Columbia Gulf.  Range was the shipper to whom the 200,000 Dth/day of firm transportation would be provided.

7.    Complainants further state that on December 21, 2016, the Commission issued a certificate for three expansion projects, which included the Adair Southwest Expansion Project.[2]  Texas Eastern accepted the certificate of public convenience and necessity for

---

[2] *Texas Eastern Transmission, LP*, 157 FERC ¶ 61,223 (2016) (Certificate Order).

the Adair Southwest Expansion Project on January 9, 2017,[3] and commenced service on May 1, 2018.[4]

8.      Complainants state that under Contract No. 911376-R2 (Service Agreement), Range holds primary receipt point rights for the full contract Maximum Daily Quantity (MDQ) of 200,000 Dth/day at Uniontown West in Fayette County, Pennsylvania, and primary delivery point rights on Texas Eastern at the Adair Interconnect for the full contract MDQ of 200,000 Dth/day.  Range uses this capacity to transport natural gas from production areas in western Pennsylvania on Texas Eastern to the Columbia Gulf system via the Adair Interconnect.

9.      Complainants further state that Range also holds a firm transportation service agreement on Columbia Gulf that provides Range 200,000 Dth/day of primary receipt point rights at Tetco/Adair Co., Kentucky Receipt (the Adair Interconnect) and primary delivery point rights at CGT-Rayne (30,000 Dth/day), Florida Gas (20,000 Dth/day), and Transco-Evangeline (150,000 Dth/day) (Contract No. 196009).

10.     According to the Complaints, on October 11, 2006, Texas Eastern and Columbia Gulf entered into the Adair Interconnection Agreement, which defines each party's rights and obligations with respect to the Adair Interconnect.  On May 8, 2013, the agreement was amended and restated to include modifications to make the facilities bi-directional so that gas may be received and delivered by both parties.[5]

11.     Complainants also state that Texas Eastern and Columbia Gulf maintain an Operational Balancing Agreement (OBA), entered into on October 12, 2006, to address imbalances at the Adair Interconnect.  Pursuant to the OBA, Texas Eastern and Columbia Gulf agreed that, to the extent operationally feasible, the total daily operational imbalance on any gas day would not exceed 10,000 Dth and the total cumulative operational imbalance on any gas day would not exceed 30,000 Dth.[6]

---

[3] Texas Eastern Transmission, LP, Acceptance of Certificate of Public Convenience and Necessity, Docket Nos. CP16-3-000 and CP16-3-001 (Jan. 9, 2017).

[4] Texas Eastern Transmission, LP, Final Notice of Commencement of Service, Docket Nos. CP16-3-000 and CP16-3-001, (filed on May 3, 2018).

[5] Joint Complaint, Ex. RR-0003.

[6] Joint Complaint, Ex. RR-0004.

## II.    Public Notice and Interventions

12.    Notice of the filings was issued on December 23, 2021.  Interventions and protests were due on January 10, 2022.  Pursuant to Rule 214,[7] all timely filed motions to intervene are granted.  Texas Eastern filed answers and motions to dismiss the Complaints on January 10, 2022.  EQT Energy, LLC (EQT Energy) filed comments in both dockets opposing any request to consolidate its complaint against Texas Eastern in RP21-1058-000[8] with the Joint Complaint and Range Complaint because its complaint is factually and legally distinct from those complaints.

13.    On January 25, 2022, Complainants and Range filed separate answers that were limited to Texas Eastern's motions to dismiss.  Complainants assert that they have established a *prima facie* case of violations by Texas Eastern and have met all the Commission's procedural requirements.  They assert that the motions to dismiss should be denied and the Complaints should be set for hearing.  Because we are addressing the merits of the Complaints below, we need not address the procedural issues raised by Texas Eastern's motion to dismiss or the Complainants' answers to the motions to dismiss.[9]

## III.    Complaints

14.    The Complaints arise from the same incidents: the 2019 and 2021 Curtailments. We will summarize the allegations in the Complaints together.  The difference between the Complaints is that in the Range Complaint, Range seeks remedies that apply only to Range as a shipper on Texas Eastern.  Similarly, we will summarize Texas Eastern's answers together.

### A.    The 2019 and 2021 Curtailments

15.    The Complaints allege that operational issues that led to the 2019 and 2021 Curtailments began prior to those incidents.  The Complaints assert that in 2018, Texas Eastern and Range engaged in discussions where Texas Eastern informed Range that Texas Eastern was uncertain whether it would be able to deliver gas from Texas Eastern into Columbia Gulf at the Adair Interconnect due to the potential for

---

[7] 18 C.F.R. § 385.214 (2021).

[8] *EQT Energy, LLC v. Texas Eastern Transmission, LP*, 177 FERC ¶ 61,159 (2021).

[9] Additional answers addressing various procedural issues were filed on February 9 by Texas Eastern, on February 24 by Range, on March 11 by Texas Eastern, and on March 18 by Range.

higher operating pressures on Columbia Gulf upon the completion of the Gulf XPress Project in 2019. This project added compression to Columbia Gulf's pipeline both upstream and downstream of the Adair Interconnect. The Complaints state that Range sent a letter to Texas Eastern asserting that Texas Eastern was responsible for providing firm service under the contract.[10] The Complaints state that, in its letter in response, Texas Eastern disagreed with Range's characterization that it may potentially violate the contract or NGA.[11] The Complaints state that Texas Eastern acknowledged that it was discussing Range's concerns about the Adair Interconnect with Columbia Gulf. The Complaints contend that Texas Eastern took no action to attempt to mitigate these concerns leading up to the first incident in 2019.

16.    The Complaints submit that on August 1, 2019, and on May 4, 2020, Texas Eastern experienced line failures that released natural gas near compressor stations in close proximity to the Adair Interconnect. The Complaints state that beginning on August 8, 2019, Texas Eastern was required to engage in corrective actions and was subject to line pressure restrictions by the Pipeline and Hazardous Materials Safety Administration (PHMSA).[12] The Complaints state in December 2020 restriction were lifted and that none of the three affected lines remain subject to PHMSA's ongoing pressure restrictions and, therefore, Texas Eastern can operate its line at pressures up to the certificated maximum allowable operating pressure (MAOP).[13]

17.    The Complaints contend that Range experienced a substantial interruption in service due to Texas Eastern's inability to deliver gas at adequate pressures for delivery into the Columbia Gulf pipeline at the Adair Interconnect from November 5 through November 11, 2019 (2019 Curtailment). The Complaints assert that Texas Eastern did not post any critical notices relating to the interruption in service before or during the 2019 Curtailment.

18.    The Complaints state that, in contrast, Columbia Gulf posted several critical notices as early as August 29, 2019, stating that Texas Eastern's inability to deliver gas into Columbia Gulf's system at Columbia Gulf's prevailing operating pressures created a significant imbalance between Texas Eastern's pipeline and Columbia Gulf's pipeline. The Complaints assert that, as a result of this underperformance, on November 4, 2019, Columbia Gulf significantly reduced receipts at the Adair Interconnect from 200,000 Dth/day to 60,000 Dth/day beginning on November 5, 2019. The Complaints state that

---

[10] Joint Complaint ¶ 27 (citing Ex. RR-0005).

[11] Joint Complaint ¶ 28 (citing Ex. RR-0006).

[12] Joint Complaint ¶¶ 30-31 (citing Ex. RR-0007).

[13] Joint Complaint ¶¶ 32-33 (citing Exs. RR-0001 and RR-0009).

because Range's capacity on Texas Eastern and Columbia Gulf flows through the Adair Interconnect, this notice directly curtailed Range's nominations on both Texas Eastern and Columbia Gulf. The Complaints state it was not until November 11, 2019, that Columbia Gulf fully restored receipts at the Adair Interconnect to 200,000 Dth/day.

19.    The Complaints assert that Columbia Gulf did not change or exceed its MAOP during the 2019 Curtailment and that Columbia Gulf's system operating pressure at the Adair Interconnect was well below the MAOP. The Complaints assert that Columbia Gulf reduced line pressure to accommodate Texas Eastern. The Complaints assert that while Texas Eastern was still subject to PHMSA orders, such pressure restrictions should not have presented a problem for Texas Eastern to generate sufficient pressures to deliver gas into the Columbia Gulf system at Adair during the 2019 Curtailment.

20.    The Complaints state that beginning on May 24, 2021, representatives from Texas Eastern and Columbia Gulf's parent company, TC Energy Corporation, began to reach out to Range indicating that Texas Eastern's OBA imbalance with Columbia Gulf was increasing due to Texas Eastern's failure to deliver volumes at pressures sufficient to enter the Columbia Gulf system, and that Columbia Gulf would again likely need to curtail flows to bring OBA imbalance levels back under control. The Complaints state that the OBA imbalance at the Adair Interconnect ultimately increased to over 900,000 Dth in early June 2021.

21.    The Complaints further submit that from May 27, 2021, through July 29, 2021, Range experienced a substantial interruption in service due to Texas Eastern's inability to deliver gas at adequate pressures at the Adair Interconnect (2021 Curtailment). The Complaints state that for 21 days of this period, Texas Eastern restricted Range's flows to zero Dth. The Complaints describe notices issued by Columbia Gulf during this time period reducing the receipt point capacity at the Adair Interconnect due to Texas Eastern's failure to deliver gas at adequate pressure or because of the need to address Texas Eastern's OBA imbalance. The Complaints also describe various notices issued by Texas Eastern in response to the pressure reductions and corrective actions required by PHMSA. The Complaints state that during this time period, Texas Eastern requested short-term interruptible service on Columbia Gulf in order to reduce its OBA imbalance to a manageable level.

22.    The Complaints state that on July 23, 2021, Columbia Gulf sent a letter requesting that Texas Eastern address the operational issues at the Adair Interconnect that have occurred since 2016 and described Texas Eastern's obligations under the

Adair Interconnection Agreement and Columbia Gulf's tariff.[14]  The Complaints state
that in its August 6, 2021 letter in response  Texas Eastern denied any responsibility for
the operational issues at the Adair Interconnect and argued that the pressure differentials
were due to changes on Columbia Gulf's system that occurred after Texas Eastern and
Range entered into a contract for the Adair Southwest Expansion Project and after
Texas Eastern had designed and received approvals to construct the project.  The
Complaints state that Texas Eastern asserted that it does not have any contractual
commitments to deliver gas at a specified pressure at the Adair Interconnect or to install
compression to increase its operating pressure at such point.[15]

## B.    Alleged Violations and Requests for Relief

23.    The Complaints assert that Texas Eastern failed to deliver scheduled and
confirmed volumes that Range had nominated under its firm service agreement through
the Adair Interconnect into Columbia Gulf during the 2019 and 2021 Curtailments.

24.    The Complaints assert that Commission precedent states that a "pipeline is
obligated to maintain its facilities in a manner that will allow it to provide service up to
certificated levels or to seek abandonment of capacity that was certificated but is no
longer available."[16]  The Complaints submit that Texas Eastern was unwilling to operate
its system in a manner to provide sufficient pressure for deliveries through the
Adair Interconnect during the 2019 and 2021 Curtailments to allow for Range to flow
volumes to and through the Adair Interconnect into Columbia Gulf.

25.    The Complaints contend that the Commission has held that violations of sections
4(a) and 5(a) of the NGA occur when a pipeline fails to maintain its facilities at its
certificated levels, finding that "a firm shipper must be able to reliably schedule its firm
contractual entitlements without service reductions except for *force majeure*."[17]  The
Complaints assert that Texas Eastern did not post any notices regarding issues on its
pipeline system before or during the 2019 Curtailment despite its inability to maintain
pressures at a level that would allow for deliveries to and through the Adair Interconnect.
The Complaints argue that during the 2021 Curtailment, Texas Eastern posted a notice of
*force majeure* only after Columbia Gulf noted a significant OBA imbalance at the

---

[14] Joint Complaint ¶ 48 (citing Ex. RR-0018).

[15] Joint Complaint ¶ 52 (citing Ex. RR-0022).

[16] *Maritimes and Northeast Pipeline, L.L.C.*, 80 FERC ¶ 61,136, at 61,476 (1997)
(*Maritimes*).

[17] *El Paso Natural Gas Co.*, 99 FERC ¶ 61,244, at 62,001 (2002) (citing *Amoco
Energy Trading Corp. v. El Paso Natural Gas Co.*, 93 FERC ¶ 61,060, at 61,161 (2000)).

Adair Interconnect.  The Complaints contend that while Texas Eastern was operating under its "*force majeure*," meters immediately upstream and downstream of the Adair Interconnect experienced only minimal curtailments (around 80% of scheduled volumes flowed), while the Adair Interconnect was cut 100% on each day from June 9 through July 1, 2021.

26.     The Complaints assert that pursuant to 18 C.F.R. § 284.7(a)(3) (2021), firm service is not subject to a prior claim by another customer or another class of service and receives the same priority as any other firm service.  The Complaints argue that 18 C.F.R. § 284.7(b)(2) requires pipelines to provide firm service on a basis that is equal in quality for all gas supplies transported.  The Complaints assert that Texas Eastern's failure to provide Range its contracted for firm capacity to and through the Adair Interconnect violates both regulations because Texas Eastern provided a lower priority of service to Range's firm deliveries to the Adair Interconnect than Texas Eastern provided to other firm shippers.  The Complaints assert Texas Eastern violated § 284.7 of the Commission's regulations by curtailing the Adair Interconnect to zero Dth while providing significantly greater service to geographically proximate delivery points.

27.     The Complaints contend that the Certificate Order requires Texas Eastern to maintain its system to provide certificated and contracted-for firm transportation service.  The Complaints submit that the Certificate Order conditioned its grant of the certificate on Texas Eastern complying with all applicable Commission regulations including Parts 157 and 284.  The Complaints argue that Texas Eastern failed to comply with the requirements of Part 284 of the Commission's regulations in direct violation of the Certificate Order.

28.     The Complaints assert that Texas Eastern violated Commission precedent when it failed to undertake any facilities improvements or modifications necessary to ensure certificated volumes could flow through the Adair Interconnect into Columbia Gulf.  The Complaints cite to *Northern Natural Gas Co. v. ANR Pipeline Co.*,[18] asserting that the Commission stated that Northern Natural would bear the responsibility to make changes to its system to allow for deliveries to and through an interconnect if such changes were necessary to meet the interconnecting pipeline's operating pressure.  The Complaints assert that the responsibility for addressing the pressure issues at the Adair Interconnect lies with Texas Eastern, not Range or Columbia Gulf.[19]  The Complaints contend that in the absence of a transportation service agreement between Texas Eastern and Columbia Gulf for deliveries at the Adair Interconnect, Columbia Gulf's tariff, which requires that gas be delivered into its system at sufficient

---

[18] 109 FERC ¶ 61,201 (2004) (*Northern Natural*).

[19] *Id.* ¶ 25.

pressure, controls.[20]  The Complaints submit that if Texas Eastern was aware of pressure issues at the Adair Interconnect it should have raised those issues in the Columbia certificate proceedings that impacted the Adair Interconnect.[21]

29.     The Complaints assert that Texas Eastern may attempt to evade responsibility for system modifications by arguing that *force majeure* events caused the service interruptions.  The Complaints state that during the 2019 Curtailment, Texas Eastern never issued a notice of *force majeure*.  The Complaints state that Texas Eastern scheduled and confirmed nominations for Range's volumes at the Adair Interconnect during this time.  The Complaints state that, during the 2021 Curtailments, Texas Eastern did issue a notice of *force majeure* due to PHMSA directives.  The Complaints assert, however, that Columbia Gulf issued a critical notice two days before Texas Eastern's notice stating that receipts at the Adair Interconnect would be reduced due to Texas Eastern's underperformance and its increase in OBA imbalances.  The Complaints assert that PHMSA's directive did not cause the volume curtailments at the Adair Interconnect.

30.     The Complaints request that the Commission require Texas Eastern to meet its firm service obligations pursuant to the NGA, the Commission's regulations, the Certificate Order, and Texas Eastern's tariff.  The Complaints request that the Commission require Texas Eastern to modify or build additional compression to ensure that it can meet its minimum pressure obligations and deliver conforming volumes to and through the Adair Interconnect in the future.

31.     In the Range Complaint, Range reiterates the allegations in the Joint Complaint.  Additionally, Range asserts that Texas Eastern violated its contract with Range by failing to provide firm service and that Texas Eastern violated its tariff by not providing reservation charge credits during the Curtailment Periods.

32.     Range argues that Texas Eastern breached its obligations under Contract No. 911376-R2 when Texas Eastern failed to deliver gas to the Adair Interconnect at minimum pressures sufficient for gas to enter into Columbia Gulf.[22]  Range asserts that Contract No. 911376-R2 requires Texas Eastern to deliver gas "at such pressure available at pipeline's facilities at the point of delivery not to exceed the maximum allowable

---

[20] *Id.* ¶ 23.

[21] *Id.* ¶ 19.

[22] *Virginia Natural Gas, Inc. v. Columbia Gas Transmission Corp*., 108 FERC ¶ 61,086, ¶ 35 (2004) (holding that "deliveries at less than [the minimum pressure] violate the terms of [the shipper's] service agreement").

pressure of the pipeline."[23] Range submits that section 6.2 of the General Terms and Conditions (GT&C) of Texas Eastern's tariff requires Texas Eastern to deliver gas at pressures that "are available at the Point of Delivery and resulting from Pipeline maintaining a discharge pressure of 750 pounds per square inch gauge pressure at the nearest upstream compressor station." Range contends that at no point during the Curtailments did the average of Columbia Gulf's system pressure at the Adair Interconnect exceed Texas Eastern's MAOP for the 30-Inch System, even assuming that all three lines were reduced to 80% of MAOP (748.8 psig).

33.    Range contends that the Commission should require Texas Eastern to provide full reservation charge credits for Range's contracted-for firm quantities that:
(1) Texas Eastern failed to schedule and/or deliver on its system and (2) Columbia Gulf could not provide to Range during the Curtailment Periods. Range asserts that Texas Eastern's failure to provide reservation charge credits for primary firm service that was properly nominated during the Curtailment Periods violates the reservation charge credit obligations contained in Texas Eastern's tariff.

34.    Range requests damages as a result of the alleged breach of contract. Range asserts it has incurred damages of $3,336,967.09 for the difference between what Range paid Texas Eastern in reservation charges and what Range was able to flow; $834,355.67 for the cost of redirecting flows to other markets and re-supplying the M2 Mainline Pool supply for existing markets; $1,409,674.02 for the difference between what Range paid Columbia Gulf in reservation charges and what Range was able to flow on Columbia Gulf. Range submits that the total damages to Range are $5,580,996.78.

35.    If the Commission is unwilling or unable to grant the relief requested in the Joint Complaint, Range requests the Commission find that the public interest requires abrogation of Contract No. 911376-R2 because Texas Eastern is not able to reliably provide the contracted-for firm service. Range asserts that Commission intervention in private contracts is admittedly rare. However, Range notes that in *El Paso*, the Commission relied upon the public interest exception to alleviate service reliability problems on a pipeline system. Range states that the Commission modified portions of the pipeline company's 1996 Settlement Agreement with its shippers upon a finding that the modifications were necessary to restore reliable firm service on El Paso, and therefore consistent with the public interest standard of *Mobile-Sierra*.[24]

---

[23] Texas Eastern Extension Projects Tariff Filing, Docket No. RP18-144-000, at 46 (filed Nov. 2, 2017) (Contract No. 911376-R2).

[24] Range Complaint ¶¶ 50-51; (citing *El Paso Natural Gas Co*., 99 FERC at 61,997).

C.    **Texas Eastern's Answers**

36.    Texas Eastern asserts that the Complaints fail to identify any violation of the NGA, Part 284 of the Commission's regulations, the Certificate Order, the Service Agreement, Texas Eastern's Tariff, or any other Commission regulation, order, or agreement, identified in the Complaints.  Although asserting that this matter does not belong before the Commission, Texas Eastern states it is willing to continue to work with Range and Columbia Gulf outside of a Commission proceeding to determine a mutually agreeable resolution to address the flow of gas through the Adair Interconnect.

37.    Texas Eastern asserts that the claim in the Complaints that Texas Eastern failed to meet its firm service obligations by not delivering to the Adair Interconnect at a specified pressure is incorrect.  Texas Eastern submits that the Service Agreement with Range does not impose a minimum delivery pressure obligation on Texas Eastern.

38.    Texas Eastern states that the Service Agreement, which incorporates the tariff by reference, includes the terms and conditions of Range's firm transportation service under Rate Schedule FT-1, including pressure obligations that Complainants allege Texas Eastern is violating.  Texas Eastern states its tariff provides, in relevant parts, that Texas Eastern shall deliver gas at delivery points

> at such pressures as are available at the Point of Delivery and resulting from [Texas Eastern] maintaining a discharge pressure of 750 pounds per square inch gauge pressure at the nearest upstream compressor station and a suction pressure of 575 pounds per square inch gauge pressure at the nearest downstream compressor station.[25]

Section 6.2 also provides that Texas Eastern and Customer "may specify in the executed service agreement a minimum delivery pressure obligation at any Point of Delivery." Texas Eastern states that it has agreed to minimum pressure obligations in other service agreements with other customers based on the authority in GT&C section 6.2.[26] Texas Eastern states that the commitment to meet a minimum pressure obligation often requires Texas Eastern to increase the operating pressure of its system and to maintain the increased operating pressure at the delivery point for the term of the contract. Texas Eastern states it often must install additional facilities necessary to ensure that it can maintain operating pressure at the delivery point even as operating conditions on

---

[25] GT&C section 6.2.

[26] Texas Eastern Answer, app. B, Affidavit of Robert L. Huffman at 6 (Huffman Affidavit).

Texas Eastern's system change over time. The cost of such facilities would be borne by the customer benefiting from such pressure obligation.[27]

39.     Texas Eastern states that the Service Agreement does not include a minimum pressure obligation. Texas Eastern submits that Exhibit B to the Service Agreement states that deliveries to the Adair Interconnect will be made "AT SUCH PRESSURES AVAILABLE IN PIPELINE'S FACILITIES AT THE POINT OF DELIVERY NOT TO EXCEED THE MAXIMUM ALLOWABLE OPERATING PRESSURE OF THE PIPELINE."[28] Texas Eastern asserts that this language is used in its service agreements when Texas Eastern and its customer have not agreed to a minimum pressure obligation.[29]

40.     Texas Eastern contends that the Precedent Agreement between Texas Eastern and Range for the Adair Southwest Project did not include any discussion of pressure commitment and no pressure commitment was agreed to with Range as part of the project.[30] Texas Eastern asserts that the scope of facilities constructed as part of the Adair Southwest Project were those necessary to provide Range with 200,000 Dth/d of firm transportation service from the primary receipt point to the primary delivery point under the Service Agreement without a minimum delivery pressure obligation.[31]

41.     Texas Eastern argues that the Complaints rely on inapplicable quotes from Commission orders to support their claim that Texas Eastern operating at a lower pressure than Columbia Gulf violates the NGA and the Certificate Order. Texas Eastern argues that the few cases cited in the Complaints address certificated capacity and not operating pressure and, as such, are not relevant. Texas Eastern submits that in *Maritimes*, the Commission was addressing a pipeline's obligation to maintain certificated firm capacity on the system or seek abandonment.[32] Texas Eastern asserts that the Complaints do not allege that Texas Eastern has failed to maintain firm capacity

---

[27] *Id.*

[28] Huffman Affidavit Ex.2 (emphasis in original).

[29] Huffman Affidavit ¶¶ 5, 10.

[30] Huffman Affidavit ¶¶ 5, 7; *see also* Exhibit 1 to Huffman Affidavit Ex. 1 (not providing for a pressure commitment at the Adair Interconnect).

[31] *Id.*

[32] Texas Eastern Docket No. RP22-433-000 Answer at 3, (citing *Maritimes*, 80 FERC at 61,476). Unless otherwise specified, references to Texas Eastern's Answer refer to the answer filed on January 10, 2022.

and explicitly concede that Texas Eastern has maintained sufficient firm capacity to provide service to Range.[33]

42.     Texas Eastern asserts that the Complaints' reliance on *El Paso* is misplaced. In *El Paso*, the Commission addressed El Paso's lack of sufficient firm capacity to meet demand for firm service on its system and its use of its capacity allocation methodology during scheduling to cut firm service in non-emergency situations to meet the growing demand.[34]  Texas Eastern states that the Commission concluded that such cuts during scheduling were inconsistent with 18 C.F.R. § 284.7, which provides that firm service is not subject to another customer's prior claim, and that "a firm shipper must be able to reliably schedule its firm contractual entitlements without service reductions except for force majeure."[35]  Texas Eastern asserts that the Complaints are not alleging that Texas Eastern is cutting Range's nominations to provide firm service to another customer.  Texas Eastern contends that the Complaints concede that Texas Eastern scheduled Range's nominations except for partial reductions due to a force majeure event in 2021.[36]  Texas Eastern contends that the cuts in Range's scheduled nominations at issue in the Complaints are the result of Columbia Gulf reducing scheduled volumes during the confirmation process.[37]

43.     Texas Eastern asserts that the Complaints' allegations that Range received lower priority service than other firm shippers is incorrect.  Texas Eastern submits that the Complaints' own evidence shows that the difference in deliveries during the 2019 and 2021 periods was the result of actions by Columbia Gulf and not any lower priority of service on Texas Eastern.  With respect to the 2019 period, the Complaints provide documents supporting that Columbia Gulf, not Texas Eastern, reduced receipts at the Adair Interconnect because of Texas Eastern's prevailing operating pressure.  Similarly, for the 2021 period, the Complaints show that Columbia Gulf reduced receipts at the

---

[33] Texas Eastern cites to Ex. No. RR-0010 of the complaint in Docket No. RP22-433-000, which are Columbia Gulf system notices showing that Texas Eastern can flow up to the certificated capacity for the Adair Interconnect when Columbia Gulf's reductions are not occurring.

[34] *El Paso Natural Gas Co*., 99 FERC at 62,001.

[35] *Id.*

[36] See Joint Complaint ¶¶ 3, 4, 10, 60, 65, 77, 85 (acknowledging that the issue is with Range's nominations that were scheduled).

[37] Texas Eastern Docket No. RP22-433-000 Answer, app. D, Affidavit of James A Cymes ¶ 5 (Cymes Affidavit).

Adair Interconnect because of Texas Eastern's prevailing operating pressure.[38]
Texas Eastern contends that a comparison of Exhibit Nos. RR-0010 and RR-0011 shows
that Texas Eastern delivered the amount of gas at the Adair Interconnect that
Columbia Gulf was willing to receive as reflected in Columbia Gulf's posted notices.[39]

44.     Texas Eastern argues that the Complaints' reliance on *Northern Natural* is also
misplaced.  Texas Eastern asserts that the Complaints' recitation of the facts in
*Northern Natural* mischaracterizes the central holding of the order: that ANR Pipeline
Company (ANR) could operate its system at pressures that did "not violate [its] tariff or
contractual and certificated service obligations, and [did] not conflict with any provision
of [the Commission's] regulations or the NGA."[40]  Texas Eastern contends that the crux
of the holding in *Northern Natural* was not based on the distinction between an upstream
and downstream pipeline, as the Complaints incorrectly assert.[41]  Texas Eastern asserts
that the Commission's holding in *Northern Natural* was based on two interconnecting
pipelines, one of which desired to change the pressure at which the other operated to have
gas flow through an interconnection, without any contractual right to a specified pressure
on the other pipeline.[42]  Texas Eastern submits that if Columbia Gulf and Range desire
that gas flow through the Adair Interconnect without any contractual right to a specified
pressure on Texas Eastern, then Columbia Gulf and Range are the parties responsible for
addressing any pressure issues.

45.     Texas Eastern states that in *Northern Natural*, Northern Natural did not have a
contractual relationship with ANR, and, therefore ANR's tariff controlled.  No contract
required a specific pressure at the interconnect for either pipeline as Texas Eastern asserts
is true here.[43]  Texas Eastern states it does not have a contractual relationship with
Columbia Gulf to meet a specific pressure at the interconnect.  Texas Eastern states that
Columbia Gulf does not have a service agreement with Texas Eastern, and the
Adair Interconnection Agreement explicitly provides that each party can operate its

---

[38] Joint Complaint, Ex. RR-0010.

[39] *See also* Cymes Affidavit ¶ 6.

[40] *Northern Natural*, 109 FERC ¶ 61,201 ¶ 20.

[41] Joint Complaint ¶ 72 (framing the issue as gas flowing from Northern Natural's
system into ANR).

[42] *Northern Natural*, 109 FERC ¶ 61,201 ¶ 20.

[43] *Id.* P 23 ("[T]here is no indication in the record that an increase in pressure is
inconsistent with the terms of any of ANR's customers' service agreements").

system at its sole discretion.[44]  Texas Eastern asserts that in the absence of a contractual commitment, each pipeline is subject to the requirement of its own tariff and the responsibility to receive/deliver gas at a pressure sufficient to allow the gas to enter into the downstream pipeline rests with the party that wants gas to flow through the interconnect, that is, Columbia Gulf or Range.[45]

46.    Texas Eastern asserts that the Certificate Order does not establish minimum operating pressure obligations, and the Complaints may not demand that the Commission do so now.  Texas Eastern asserts that if Complainants had concerns related to the operating pressure at the Adair Interconnect on Texas Eastern's system as a result of the Adair Southwest Project, those concerns should have been raised in Docket No. CP16-3-000.[46]  Texas Eastern contends that requesting that the Commission direct Texas Eastern to install new facilities would impose a new condition as part of the Certificate Order and is an impermissible collateral attack on that order.

47.    Texas Eastern states that any references by Complainants to force majeure events and PHMSA corrective action orders affecting Texas Eastern's 30-Inch System are an attempt to confuse the record.  Texas Eastern asserts the various incidents and PHMSA actions are unrelated to Columbia Gulf's reduction in its receipts at the Adair Interconnect or any imbalance at the Adair Interconnect.  Texas Eastern states that the May 13, 2021 PHMSA pressure reduction order was prompted by an anomaly discovered during Texas Eastern's systemwide integrity program and prompted a *force majeure* declaration on the affected portion of the system on May 28, 2021.[47]  Texas Eastern contends that it has never claimed that prior *force majeure* events or PHMSA orders caused Range's scheduled nominations to be reduced by Columbia Gulf at the Adair Interconnect.

48.    Texas Eastern asserts that, even assuming, *arguendo*, that the Joint Complaint had identified an actual violation, the Joint Complaint should still be rejected because Complainants have not requested relief that the Commission may grant.[48]  Texas Eastern

---

[44] *See* Ex. No. RR-0003.

[45] *Northern Natural*, 109 FERC ¶ 61,201 ¶ 23 (finding "the responsibility to deliver gas at a pressure sufficient to allow the gas to enter ANR's system rests with Northern Natural," the complainant).

[46] *Id.* P 19 (finding that the appropriate time to raise concerns related to operating pressure at an interconnect was in the certificate proceeding for the interconnect).

[47] Joint Complaint, Ex. No. RR-0012.

[48] Joint Complaint ¶ 89 ("Specifically, the Complainants request that the Commission require Texas Eastern to modify or build compression on its system if the

argues that section 7(a) of the NGA prohibits the relief requested by Range and Columbia Gulf that the Commission compel Texas Eastern to build additional compression facilities.[49]   Texas Eastern states that the Commission has repeatedly held that it cannot compel a pipeline to build facilities for which the pipeline has not sought a certificate under section 7.[50]

49.    Texas Eastern asserts that Columbia Gulf has not claimed that it is adversely affected, and, therefore the Complaint should be dismissed.[51]   Texas Eastern argues Columbia Gulf is not adversely affected because it continues to charge Range full reservation charges.  Texas Eastern states that in the Joint Complaint, Complainants identify "$1,409,674.02 for the difference between what Range paid Columbia Gulf in reservation charges and what Range was able to flow on Columbia Gulf.[52]   Texas Eastern contends that Columbia Gulf has not alleged any other specific, actual harm to itself in the Joint Complaint on account of any actions of Texas Eastern.  Texas Eastern asserts that the fact that Columbia Gulf may need to curtail volumes if OBA imbalances occur in the future would also not be actual harm.[53]

50.    Texas Eastern asserts that Columbia Gulf cannot cite its tariff to argue that actions related to Texas Eastern have adversely affected Columbia Gulf.  Texas Eastern asserts that section 13(b) of Columbia Gulf's tariff plainly does not apply to Texas Eastern with

─────────────────

Commission deems it necessary.").

[49] *Panhandle Eastern Pipe Line Co. v. FPC*, 204 F.2d 675, 679 (3d Cir. 1953) ("The Commission concedes, of course, that the proviso of section 7(a) of the [NGA] expressly deprives it of authority to compel the enlargement by a natural gas company of its transportation facilities in connection with the extension or improvement of such facilities").

[50] *See, e.g.*, *Millennium Pipeline Co., L.L.C.*, 141 FERC ¶ 61,198, at 61,983 (2012) ("[T]he Commission has no authority to compel companies to construct gas facilities."); *Trailblazer Pipeline Co.*, 15 FERC ¶ 63,046, at 65,160–61 (1981) ("[T]his Commission is not in a position to compel construction of a transportation system for which no certificate is sought."); *Calpine Energy Servs., L.P. v. Southern Natural Gas Co.*, 105 FERC ¶ 61,033, at P 4 (2003) ("[I]t is well established that Section 7 of the Natural Gas Act (NGA) does not obligate pipelines to build new facilities for shippers.").

[51] 18 C.F.R. § 385.206(b)(3) (2021).

[52] Joint Complaint ¶ 64.

[53] *See, e.g.*, Joint Complaint ¶ 81 ("If [the OBA] imbalance becomes too large, Columbia Gulf may need to curtail volumes to reduce the OBA imbalance.").

respect to flows through the Adair Interconnect because Texas Eastern is not a "Shipper" on Columbia Gulf with receipts at the Adair Interconnect, and Texas Eastern as an interconnecting pipeline is not bound by section 13(b) of Columbia Gulf's tariff.

51.     Texas Eastern contends that neither the OBA nor the Adair Interconnection Agreement makes Columbia Gulf adversely affected.  Texas Eastern states that Complainants do not make any claims or allege any violation under the OBA, and even if they had, the facts set forth by Columbia Gulf in the Joint Complaint negate any possible claim of adverse effect.  Texas Eastern submits that the Joint Complaint itself indicates that Columbia Gulf was aware of the growing OBA imbalance and when the amount was too high, Columbia Gulf was able to impose restrictions until the OBA imbalances were reduced.[54]  Texas Eastern contends that the Adair Interconnection Agreement does not impose any obligation on Texas Eastern to construct facilities.  Texas Eastern states that Section 4.02(E) of the Adair Interconnection Agreement, as quoted in the Joint Complaint, merely provides that, if a party to the Interconnection Agreement desires to receive or deliver through the interconnection, then that party must have the capacity to deliver or receive up to the pipeline's MAOP.  Texas Eastern states that Section 4.02(E) also is clear that Texas Eastern, "at its sole discretion, may operate [its pipeline] up to its MAOP at any time."  Texas Eastern submits that Section 10.01 of the Adair Interconnect Agreement further provides that Texas Eastern is not obligated to deliver gas under the agreement.[55]

52.     Texas Eastern contends that the Commission could also dismiss the Joint Complaint at the outset because it fails to establish a *prima facie* case against Texas Eastern and lacks support for material facts.  Texas Eastern states that Rule 206(b)(8) requires complainants to file with their complaint "all documents that support the facts in the complaint," including contracts and affidavits.[56]

53.     Texas Eastern states that because Range is taking service under a negotiated rate agreement that explicitly provides for reservation charge credits, Range is eligible for reservation charge credits.  However, Texas Eastern asserts that under its tariff, Range is not entitled to reservation charge credits for scheduled nominations that Texas Eastern was ready, willing, and able to deliver but that were not delivered through the

---

[54] Joint Complaint ¶¶ 39-48, 78.

[55] Section 10.01 provides that Texas Eastern "makes no representation, warranty or guarantee, express or implied, by this Amended Agreement that it will receive or deliver natural gas at this proposed point of connection.  Any work initiated or expense incurred by [Columbia Gulf] herein will be at the sole cost, risk, liability, and expense of [Columbia Gulf]."

[56] 18 C.F.R. § 385.206(b)(8).

Adair Interconnect as a result of Columbia Gulf's reduction of scheduled nominations in the confirmation process.[57]  Texas Eastern contends that under GT&C section 31.3(iii) it is clear that even where there was no *force majeure* outage, Range was not entitled to a reservation charge adjustment due to Columbia Gulf's refusal to receive gas from Texas Eastern.

54.     Texas Eastern submits that, even if there were a violation, which there was not, Range is not entitled to damages, including for reservation charges paid to Columbia Gulf and Range's alleged lost business opportunity costs, because the Commission and courts have determined that the types of damages requested by Range are not available under the NGA.  Texas Eastern contends that it is well established that the Commission does not have the authority to award damages to aggrieved persons for violations of the NGA.[58]

55.     Texas Eastern argues that Range is not entitled to abrogation of the Service Agreement.  Texas Eastern argues that Range has failed to explain how the public interest would support abrogation of the Service Agreement.  Texas Eastern asserts that abrogation of the contract would require a "finding of unequivocal public necessity" or "extraordinary circumstances,"[59] an exceedingly high bar that Range has failed to come even close to meeting.  Texas Eastern asserts that Range cannot now argue that "the sanctity of the contract has been disrupted,"[60] when nothing in the contract requires Texas Eastern to meet Range's request for a minimum delivery pressure.

---

[57] Appendix D hereto, Cymes Affidavit ¶¶ 4-5; *see also* Joint Complaint, Ex. No. RR-0010.

[58] *See, e.g.*, *O'Connor & Hewitt, Ltd. v. Energy Transfer Partners, L.P.*, 122 FERC ¶ 61,103, at P 18 (2008); *see also Southern Union Gas Co. v. FERC*, 725 F.2d 99, 102-103 (10th Cir. 1984) (citing *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246 (1951); *Californians for Renewable Energy, Inc. v. Williams Northwest Pipeline*, 133 FERC ¶ 61,194, at P 26 (2010); *Northwest Pipeline Corp.*, 99 FERC ¶ 61,365, at P 47 (2002)); *Owens-Corning Fiberglas Corp. v. Transcontinental Gas Pipe Line Corp.*, 49 FERC ¶ 61,282, at 62,064 (1989); *Gas Producing Entities, Inc.*, 28 FERC ¶ 61,008, at 61,013 (1984); *Transcontinental Gas Pipe Line Corporation*, 8 FERC ¶ 61,186, at 61, 647 n. 11 (1979).

[59] *Morgan Stanley Capital Grp. Inc. v. Public Util. Dist. No. 1*, 554 U.S. 527, 550-51 (2008) (first citing *Permian Basin Area Rate Cases*, 390 U.S. 747, 822 (1968); and then citing *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 582 (1981)).

[60] Range Complaint ¶ 56.

IV.    **Discussion**

56.    The issue presented by the Complaints is whether Range is receiving the firm service it is entitled to and paying for under its contract with Texas Eastern.  The Complaints state that, during the Curtailment Periods, Texas Eastern was not able to deliver Range's natural gas on to the Columbia Gulf System at the Adair Interconnect. The Complaints allege that Texas Eastern's inability to deliver Range's natural gas is a violation of the NGA, Commission regulations, the Certificate Order, various contractual obligations, and a number of Commission orders.

57.    While the Complaints allege various violations, our analysis rests on the question of whether Texas Eastern has any obligation to Range and/or Columbia Gulf to deliver natural gas at a specific pressure at the Adair Interconnect.  If Texas Eastern does not have any minimum pressure obligation at the Adair Interconnect, then Columbia Gulf's refusal to confirm Range's natural gas during the Curtailment Periods is not Texas Eastern's responsibility.  As discussed below, a review of the record reveals that, consistent with all its legal obligations, Texas Eastern is providing the required, and contracted-for, firm service to Range at the Adair Interconnect.  We find that Texas Eastern has not committed any violations or breached any obligations; rather, for certain periods, Columbia Gulf has refused to confirm Texas Eastern's scheduled gas at the Adair Interconnect because of pressure differentials.

58.    We conclude that the Complaints have failed to show that Texas Eastern has any contractual obligations to deliver Range's natural gas to the Columbia Gulf system at the Adair Interconnect at any specific minimum pressure other than that provided by the tariff or Service Agreement.  The fact that Columbia Gulf failed to confirm Range's natural gas at the Adair Interconnect because of pressure differentials between the Columbia Gulf and Texas Eastern's systems does not result in any breach of contract on Texas Eastern's part.  The record shows that there was no minimum pressure requirement in the precedent agreement with Range that was part of the Adair Southwest Expansion Project.[61]  Texas Eastern has shown that under section 6.2 of its tariff and under the Service Agreement with Range,[62] it is only required to deliver natural gas at the available line pressures at the time.  Texas Eastern has also shown that under section 6.2 of its tariff, shippers have the ability to specify minimum delivery pressure obligations in the executed service agreement, but Range did not do so.  During the Curtailments, Texas Eastern scheduled and was ready to deliver Range's gas on to the Columbia Gulf

---

[61] Huffman Affidavit at ¶¶ 5, 7; *see also* Huffman Affidavit Ex. 1 (not providing for a pressure commitment at the Adair Interconnect).

[62] Huffman Affidavit Ex. 2.

system at the Adair Interconnect at the prevailing pressure required by the tariff and
Service Agreement.

59.    The Complaints assert that because Texas Eastern has not maintained sufficient
operating pressure to deliver into the Columbia Gulf System at the Adair Interconnect, it
has violated the NGA, the Certificate Order and the Commission's Part 284 regulations
concerning firm service.  We find that the Complaints have not met their burden of
proving that Texas Eastern has committed any statutory or regulatory violations.  The
Complaints' reliance on *Maritimes* and *El Paso* to support the allegation is misplaced.
Neither of those cases involved a pipeline's pressure obligations.  In *Maritimes*, the
pipeline was faced with maintaining certificated capacity or filing for abandonment.[63]  In
*El Paso*, the pipeline did not have sufficient capacity at certain delivery points to fulfill
its firm service obligations and was required to engage in a capacity allocation process.[64]
Here, the Complaints have not alleged that Texas Eastern has either failed to maintain its
certificated capacity to the Adair Interconnect or does not have sufficient capacity to
meet all of its firm service obligations at the Adair Interconnect.  The record shows that
absent the reductions by Columbia Gulf at the Adair Interconnect during the
Curtailment Periods, Texas Eastern has been operating at its certificated capacity and has
been able to meet its firm service obligations to Range.[65]

60.    The Complaints are also incorrect in asserting that Range has received lower
priority firm service in violation of Part 284 because shippers at geographically
proximate delivery points to the Adair Interconnect did not have their deliveries reduced
to the extent that Range did.  This is a misleading comparison because Range has a
contract for all the capacity at the Adair Interconnect and therefore could not receive
lower priority service at that point when it is the only shipper.[66]  Moreover, the
Complaints simply provide an exhibit, which Texas Eastern notes is unsponsored,[67]
showing deliveries were cut less at geographically proximate points.[68]  These are
different delivery points with different shippers and there is no information or analysis as

---

[63] *Maritimes and Northeast Pipeline, L.L.C.*, 80 FERC at 61,476.

[64] *El Paso Natural Gas Co.*, 99 FERC at 62,001.

[65] Ex. No. RR-0010 of the complaint in Docket No. RP22-433-000
(Columbia Gulf system notices showing that Texas Eastern can flow up to the certificated
capacity for the Adair Interconnect when Columbia Gulf's reductions are not occurring).

[66] Joint Complaint ¶ 19, Huffman Affidavit Ex. 2.

[67] Texas Eastern Docket No. RP22-433-0000 Answer at 20-21.

[68] Ex. RR-0011.

to how such deliveries would affect the Adair Interconnect. In addition, based upon the schematic in the Joint Complaint,[69] it also appears that the points that the Complaints attempt to compare are meter stations on Texas Eastern instead of an interconnect with another pipeline like Columbia Gulf, so we do not find this comparison convincing. Texas Eastern met its Part 284 firm service obligations by appropriately scheduling the amounts of gas that Columbia Gulf was willing to take during the Curtailment Periods. The fact that Columbia Gulf did not confirm the gas due to pressure differentials at the Adair Interconnect[70] does not mean that Range received lower priority or lower quality firm service from Texas Eastern.

61.     The Complaints rely on *Northern Natural* for the assertion that Texas Eastern is responsible for making changes to its system to ensure that Range's gas is at an adequate pressure to enter Columbia Gulf's system. In *Northern Natural*, ANR had a firm transportation agreement with Northern Natural under which Northern Natural would transport gas to an interconnect between the pipelines. Under the agreement, Northern Natural was to deliver gas at a specified average minimum pressure. ANR terminated the agreement and Northern Natural had to remarket the capacity. Northern Natural filed a complaint asserting that due to an expansion project on ANR, ANR required higher delivery pressures at the interconnect. Northern Natural stated that it did not have the capability to deliver consistently at the higher pressures and was unable to remarket the capacity. Northern Natural claimed that it and its shippers were being denied access to ANR so that ANR could service expansion shippers. Northern Natural argued that ANR departed from longstanding practice and that Northern Natural should not bear the burden of modifying its facilities. Among other things, Northern Natural requested that the Commission direct ANR to modify its facilities so that gas could be accepted at the prior pressure requirement.[71]

62.     The Commission found that Northern Natural's complaint was a collateral attack on the certificate order for ANR's expansion project. The Commission nevertheless considered the merits of Northern Natural's complaint and rejected it. The Commission found "that the increase in ANR's operating pressure at the Janesville interconnect will not violate ANR's tariff or contractual and certificated service obligations, and will not conflict with any provision of our regulations or the NGA."[72] The Commission further found "that ANR's intent to increase pressure at Janesville is consistent with the terms of its tariff, and there is no indication in the record that an increase in pressure is

---

[69] Joint Complaint at 10.

[70] Ex. RR-0010 of the Complaint; *See also* Cymes Affidavit ¶ 6.

[71] *Northern Natural*, 109 FERC ¶ 61,201.

[72] *Id.* P 20.

inconsistent with the terms of any of ANR's customers' service agreements. Therefore, the responsibility to deliver gas at a pressure sufficient to allow the gas to enter ANR's system rests with Northern Natural."[73]

63.     In order to support their request that Texas Eastern make modifications to its system in order to deliver gas on to Columbia Gulf, the Complainants focus on the finding in *Northern Natural* that it was Northern Natural's responsibility to deliver at adequate pressure at the interconnect with ANR. The Complaints also focus on the relationship between Northern Natural and ANR as interconnecting pipelines.

64.     The Commission finds that the Complaints' reliance on *Northern Natural* is misplaced. The Commission denied Northern Natural's request that ANR make modifications to its system so that Northern Natural could deliver at historical pressures. Columbia Gulf and Range are making the same request here. The reason for the denial was that ANR had no legal obligation to accept Northern Natural's gas and it was operating consistent with its tariff. The same reasoning applies to Texas Eastern. As discussed above, the contract between Range and Texas Eastern does not specify any minimum delivery pressure and Texas Eastern is delivering gas at prevailing line pressure pursuant to its Tariff. In addition, as Texas Eastern has shown, there is no obligation on the part of Texas Eastern to deliver gas to Columbia Gulf at specified line pressure in either the Adair Interconnect Agreement or the OBA with Columbia Gulf.[74] The Complainants' argument, based on *Northern Natural*, that Columbia Gulf's tariff governs Texas Eastern's deliveries is incorrect because Section 13(b) of Columbia Gulf's tariff applies to "Shippers," and Texas Eastern is an interconnecting pipeline, not a shipper on Columbia Gulf.[75] Finally, and notably, while the Commission determined that Northern Natural would be responsible for delivering to ANR at sufficient pressure, the Commission did not order Northern Natural to make any modifications to its system as requested here. Thus, in this case, in the absence of any contractual obligations between

---

[73] *Id.* P 23.

[74] Section 4.02(E) of the Adair Interconnection Agreement states that Texas Eastern, "at its sole discretion, may operate [its pipeline] up to its MAOP at any time." Section 10.01 of the Adair Interconnect Agreement further provides that Texas Eastern is not obligated to deliver gas under the agreement. Ex. No. RR-0003 to Joint Complaint.

[75] Section 13(b) of the GT&C of Columbia Gulf's tariff states that "Shipper shall deliver gas or cause gas to be delivered to Transporter at the receipt points at a pressure sufficient to allow the gas to enter Transporter's pipeline as such pressure shall vary from time to time." Joint Complaint at 37, n. 93.

the parties concerning line pressure, the financial burden was on the party who required delivery at a specific line pressure.

65.     In discussing various PHMSA directives imposed on Texas Eastern, the Complaints state "Texas Eastern may attempt to evade responsibility for system modifications by arguing that *force majeure* events caused the service interruptions not Texas Eastern's mismanagement of its system during the Curtailments."[76] We find that the arguments are not relevant. The Complaints are attributing motives or explanations to Texas Eastern without any evidentiary support. Moreover, in its answer, Texas Eastern states it "has never claimed that prior *force majeure* events or PHMSA orders caused Range's scheduled nominations to be reduced by Columbia Gulf at the Adair Interconnect."[77] Further, given that Texas Eastern has no minimum pressure obligation at the Adair Interconnect and there is no information in the record that Texas Eastern is not maintaining its certificated capacity, it is unclear how references to PHMSA directives would support the relief requested by the Complaints.

66.     Complainants also state that Texas Eastern failed to post timely notices regarding issues on its pipeline system before or during the 2019 and 2021 Curtailments. However, we find that, in this case, Texas Eastern was not required to post notices about the pressure differentials because they were outside of its control and Texas Eastern did not have a legal obligation to address them. If the curtailments were the result of Columbia Gulf's decision to not accept deliveries due to the pressure differentials between the two pipeline systems, a notice by Texas Eastern would not have made a practical difference to the status of Range's deliveries into the Adair Interconnect.

67.     Texas Eastern raised the question of whether Columbia Gulf, as a Joint Complainant, was adversely affected by Range's inability to deliver through the Adair Interconnect.[78] Because the Commission will dismiss these complaints, we do not reach the issue of whether Columbia Gulf was adversely affected.

68.     Because the Commission finds that the Complaints have not shown that Texas Eastern has committed any legal violations, the Commission need not address the requests for remedies in the Joint Complaint or the Range Complaint. The Commission will address the issue of reservation charge credits in the Range Complaint because while it is part of Range's request for damages, it also involves the substantive issue of whether Texas Eastern violated its tariff. Range claims that Texas Eastern violated its tariff by not providing reservation charge credits for the Curtailment Periods. Texas Eastern states

---

[76] Joint Complaint at ¶ 76.

[77] Texas Eastern Docket No. RP22-433-000 Answer at 27.

[78] Texas Eastern Answer in Docket No. RP22-433-000 at 29-34.

that while Range is eligible for reservation charge credits under its contract, it is not entitled to them under the terms of the tariff because service was not completed due to Columbia Gulf's failure to confirm Range's volumes.

69.    The Commission agrees with Texas Eastern and finds that Range is not entitled to reservation charge credits and therefore Texas Eastern has not violated its tariff. Section 31.3 of Texas Eastern tariff states that:

> Notwithstanding any other provision in Pipeline's FERC Gas Tariff, in no event shall Customer be entitled to a decrease in its Reservation Charge for Pipeline's failure to deliver any Quantity of Gas as contemplated under this Section 31: . . . (iii) due to the conduct of the downstream operator of the facilities at the applicable Point(s) of Delivery, including, without limitation, the refusal to receive any Quantity of Gas from Pipeline that Pipeline has made available for delivery, as long as such conduct was outside the control of Pipeline . . . .

As it has been already stated in the order, Texas Eastern appropriately scheduled Range's gas but Columbia Gulf failed to confirm the volumes at the Adair Interconnect due to pressure differentials.  Further, as Texas Eastern has stated, for the 2021 Curtailment, on days when a *force majeure* event was in effect, Texas Eastern only scheduled Range's nominations that could be delivered consistent with the *force majeure* restriction[79] and provided reservation charge credits in accordance with GT&C section 31.2 for amounts that were not scheduled for delivery by Texas Eastern.[80]  Finally, Texas Eastern states that although Range claims to be seeking reservation charge credits for reservation charges paid to Texas Eastern,[81] Range has withheld payment of those reservation charges for which it is seeking reservation charge credits.[82]

70.    Accordingly, for all the reasons discussed above, we find that, based upon the record, the Complainants have failed to meet their burden of proving that Texas Eastern has violated its certificate obligations, the NGA, Commission regulations,

---

[79] Cymes Affidavit ¶ 5.

[80] Texas Eastern Docket No. RP22-433-000 Answer, app. C, Affidavit of J. Berk Donaldson ¶ 8.

[81] See Range Complaint at ¶¶ 4, 22, 44.

[82] Texas Eastern Docket No. RP22-435-000 Answer at 22, n. 74.

Texas Eastern's Tariff, and Range's firm service agreement with Texas Eastern. The Joint Complaint and the Range Complaint are therefore dismissed.

<u>The Commission orders</u>:

      The Joint Complaint in Docket No. RP22-433-000 and the Range Complaint in Docket No. RP22-435-000 are dismissed.

By the Commission.

( S E A L )

                                      Kimberly D. Bose,
                                          Secretary.

# EXHIBIT B

179 FERC ¶ 62,106
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

| | |
|---|---|
| Range Resources-Appalachia, LLC and Columbia Gulf Transmission, LLC | Docket No.  RP22-433-001 |
| v. | |
| Texas Eastern Transmission, LP | |
| | |
| Range Resources-Appalachia, LLC | Docket No.  RP22-435-001 (Not Consolidated) |
| v. | |
| Texas Eastern Transmission, LP | |

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(May 26, 2022)

Rehearing has been timely requested of the Commission's order issued on March 24, 2022, in this proceeding.  *Range Resources-Appalachia, LLC v. Texas Eastern Transmission, LP*, 178 FERC ¶ 61,217 (2022).  In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied.  15 U.S.C. § 717r(a); 18 C.F.R. § 385.713 (2021); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 15 U.S.C. § 717r(a), the requests for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section.  As also provided in 15 U.S.C. § 717r(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Kimberly D. Bose,
Secretary.